Opinion delivered May 18, 1887.

No. 5457.

TOM PITNER *v.* THE STATE.

1. WITNESS—DISQUALIFICATION AS A FELON—JUDGMENTS RENDERED IN ANOTHER STATE—CASE STATED.—The Penal Code of Texas defines "felony" to be "every offense which is punishable with death, or by imprisonment in the penitentiary, either absolutely or as an alternative," and provides that all forgeries are punishable by confinement in the penitentiary; wherefore, all forgeries in this State are felonies, and, as such, under the Constitution of this State, can only be prosecuted by indictment. The Code of Procedure (Art. 730) disqualifies as witnesses "all persons who have been or may be convicted of felony in this State, *or in any other jurisdiction*," unless pardoned, etc. Relying upon this latter provision, the defense in this case, for the purpose of disqualifying a State's witness, offered a certified copy of a judgment of a circuit court of the State of Kansas which showed that, upon an information, a man bearing the same name as the witness had been convicted of forgery in the second degree, and therefore had been sentenced to a term in the penitentiary. The State objected to the judgment because it neither showed that forgery was a felony in Kansas, nor that the witness had been convicted of a felony. The trial court sustained these objections to the judgment. *Held* that the defense, in order to make the judgment available for the purpose of disqualifying the State's witness, should have proved by the law of Kansas that forgery was a felony in that State, and that such a felony can be there prosecuted upon an information; and, as no such proof was adduced, the said judgment could not disqualify the witness in any court of this State, wherefore the trial court committed no reversible error in sustaining the said objections.

2. SAME—CONSTITUTIONAL LAW.—The judgment offered to disqualify the State's witness showed upon its face that it was rendered upon an information, and not upon an indictment, and that he had been convicted in Kansas of forgery in the second degree; wherefore the prosecution contends that the said offense must either be a misdemeanor in Kansas, or,

if a felony, the judgment of conviction was void because the Constitution of the United States provides that "No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury." But *held* that this provision of the United States Constitution is a limitation only upon the the powers of the Federal Government, and does not impair the powers of the States. Therefore it is competent for Kansas or any other State to authorize the prosecution of felonies by information; but, to warrant the use in the courts of Texas of a judgment of conviction rendered on an information in another State for an offense which is felony in this State, it must be proved by the law of the other State that such judgment was valid under its organic and statutory law.

3. SAME—INTERPRETATION OF THE CODES—"OTHER JURISDICTION."—Article 730 of the Code of Procedure disables as witnesses "all persons who have been or may be convicted of felony in this State or in *any other jurisdiction,*" unless, etc. *Held* that the expression "other jurisdiction" is not to be limited to the tribunals of the United States exercising their jurisdiction in Texas, for such a construction would be a narrow and strained interpretation of the language used, and would not fully accomplish the legislative intent. See the opinion for a clear exposition of this and the antecedent rulings.

4. CHARGE OF THE COURT.—To invoke instructions on the law controlling accomplice testimony, there must be evidence to which the instructions would be applicable.

5. SAME—PENALTY—VERDICT—CASE OVERRULED.—With regard to the punishment for cattle theft, the trial court instructed the jury that it was "not less than two nor more than five years," but failed to instruct that it should be by confinement in the penitentiary. The verdict assessed the punishment at "confinement in the penitentiary for two years." The charge of the court was not excepted to. *Held* that the omission in the charge is not fundamental, nor even reversible. error, inasmuch as it is obvious that it neither misled the jury nor prejudiced the accused. So far as this ruling may conflict with that of this court in Hamilton's case, 2 Texas Court of Appeals, 494, the latter case is overruled.

APPEAL from the District Court of Haskell. Tried below before the Hon. J. V. Cockrell.

The indictment charged the appellant with the theft, on October 10, 1885, of "one head of cattle," the property of Dick Oldham. The jury found him guilty, and assessed his punishment at confinement in the penitentiory for two years.

Oldham, the alleged owner, was the first witness for the State. He testified that in 1885 he owned and exclusively controlled a stock of cattle which ranged in Haskell, Shackleford and Jones counties. His brand was OLD on the side and O on the hip. He never consented that the defendant, or any one else, should use, kill, take or otherwise dispose of any of his cattle.

The second witness for the State was A. S. Kaufman, and, as the opinion shows, the principal rulings in the case arise upon the showing made by the defense to establish his incompetency as a witness. As the opinion sufficiently discloses the facts on that subject there is no occasion to reiterate them here.

Kaufman testified that he had lived in Haskell county since July 1, 1885, and knew Tom Pitner, the defendant. When witness, in July, 1885, first came to Haskell county, he went to John Casner's to live, and the defendant was then living there. At that time there was at John Casner's a cow branded OLD on the side and O on the hip, and she was then suckling two calves, of which one was a red calf and the other a red and white spotted one. The Casners told witness that the red calf was the offspring of said cow, and that the other one was a "hash knife" cow's calf. Witness never saw the "hash knife" cow; she had gone off before he went to Casner's. The OLD cow came up regularly with the milk cows. About the first Sunday in October, 1885, witness and the defendant were down on "Brushy," and there saw the said cow. Defendant drove her about a quarter of a mile to a hackberry thicket near the mouth of Brushy, and then took out a Winchester and said he was going to kill the cow and brand the calf, and he would "have these d—n rich fellows around here calling him 'mister.'" The gun belonged to Louis Casner. Defendant shot the cow down in that hackberry thicket. Shortly after that the defendant and witness were at old man Casner's calf pen, and the defendant branded the red calf which had sucked the said cow, putting on it his own brand, and also branded the other calf with a brand claimed by Mrs. Casner, his mother. All this occurred in Haskell county, Texas, and witness identifies the defendant as Tom Pitner, and as the man who shot the cow and branded the calves. A few days after the cow was killed the witness told Louis Casner that Tom Pitner, this defendant, had killed her. Witness also told Mr. Long and others about it. Early in November, 1885, the witness quit working for John Casner and went to work for Louis Casner, and within a few days thereafter told Louis Casner of defendant's killing the cow and branding the calves. Defendant, after branding the calves, turned them out with the other cattle at old man John Casner's.

On his cross examination, the witness was certain that he told Louis Casner about the defendant's killing a cow in a hackberry thicket near the mouth of Brushy. He did not tell said Casner

that she was killed in a chinaberry thicket. The conversation occurred in Louis Casner's house, and old man Agnew and Louis Casner's family were present at it. The cow was killed on the first Sunday in October, 1885, and witness was as sure of that fact as of anything else he had stated. He did not help the defendant brand the red calf, nor did he catch hold of the rope.

The State next put in evidence the recorded brand of R. H. Oldham, the alleged owner of the cow in question. It accorded with the description given by him in his testimony.

W. J. Long, for the State, testified that he had for two years been a sheep herder for John Casner, and knew Tom Pitner, the defendant, who lives with John Casner. In the summer and fall of 1885, John Casner had in his pen an OLD cow, which was suckling two calves. Witness thought both the calves were red bulls. He saw one of them with defendant's brand upon it, and was sure it was a red calf. Defendant was with witness at the time, and said that he branded the calf, and that it was the motherless calf which sucked the cow in question.

Louis Casner, testifying for the State, stated that he lived with John Casner, and that in the summer and fall of 1885 the latter had in his pen an OLD cow. Witness milked her but once, and then there was but one calf sucking her, and it was a red calf. Since then the witness had seen the cow once, and that was either a few days before October 19, 1885, or a few days after the twenty-fourth of the same month.

On his cross examination, Louis Casner stated that the witness Kaufman told him that the defendant killed the said cow in a chinaberry thicket near the mouth of Brushy. Witness was certain that Kaufman said it was in a chinaberry thicket, and that he did not say it was in a hackberry thicket. Kaufman so told witness at the latter's house, a few days after he, Kaufman, had left old man John Casner's, which was in the latter part of October or early in November, 1885, and had come to work for witness. Soon afterwards the witness went to the mouth of Brushy and to a chinaberry thicket where Kaufman said the cow was killed, and witness looked for but could not find the carcass of the cow. He went up and down Brushy for several hundred yards and saw no carcass nor any sign that any cow had been killed. Witness subsequently told Kaufman of his ineffectual search for the cow, and that he, Kaufman, had better not tell that tale any more, as he knew he was telling what was not so.

After proving the recorded brands of the defendant and of Mrs. Casner, the State introduced L. B. Agnew, who testified that about the latter part of October, 1885, he heard a conversation at Louis Casner's house between the latter and the witness A. S. Kaufman in regard to the killing by defendant of a cow branded OLD. Kaufman told said Casner that Tom Pitner had killed the OLD cow which the old man John Casner had had, and that he killed her in a hackberry (not a chinaberry) thicket. Kaufman also said that Tom Pitner had branded in his own brand the cow's calf, and that he, Pitner, shot the cow with a Winchester, in a hackberry thicket near the mouth of Brushy.

The State closed.

Mrs. J. E. Casner, for the defense, testified that she was the wife of John Casner, and that in the summer and fall of 1885 they had a cow which was branded OLD, and which was then raising two calves, one of which was her own and the other a "turkey track" cow's calf. The "turkey track" brand is given by some one in the Pahnandle of Texas. The said cow and her calf were turned out some time in the latter part of October, 1885. Said cow's calf was red, and the other calf was a roan, white and red, and might be called a spotted calf. The red calf was not branded when it was turned out with its mother. Defendant, who attended to all the cattle, put witness's brand on the calf of the "turkey track" cow.

*Cockrell & Cockrell* and *E. J. Hamner*, for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State: It is submitted that a judgment of criminal conviction had in one State can not be used to show or prove a witness incompetent in another State, where the witness has been convicted of an infamous crime in the former. (17 Mass., 515, Com. v. Green; 23 Ala., 44; 75 N. Y., 466, Sims v. Sims; 77 N. Y., 400; 1 Greenl., 13 ed., sec. 376 and note 2; 1 Greenl., 13 ed., sec. 505; 1 Bish. Crim. Law, sec. 109, also sec. 976 and note; Whart. Crim. Ev., sec. 363 and note, also sec. 489.)

Now these authorities base the above proposition on the theory that laws do not have extra-territorial force.

In suits upon judgments the rule is that a judgment of a sister state is prima facie correct, but can be impeached for certain reasons not necessary to be discussed here. In that case, how-

ever, the judgment is the basis of the proceeding, and does not not come in collaterally.

Does Article 730, Criminal Procedure, subdivision 5, where this language occurs, "All persons who have been or may be convicted of felony in this State, or in any *other jurisdiction,* shall be incompetent," set aside, annul, or render nugatory the authorities above cited, and change the rule as therein announced? What does the expression "or in any other jurisdiction" mean? Does that refer to the extra-territorial laws and jurisdiction, or does it refer to other courts of jurisdictional authority in Texas? Did the legislature intend to say that a judgment of conviction of felony in any other jurisdiction throughout the civilized world, or the heathen world should follow the emigrant to Texas, and be operative here against him in our State? Could the legislature, by such a sweeping clause of five words only, adopt the felony statutes of the whole domain of earth, and not only so, but also make, by one little expression of five words, the judgments of every nationality under the sun and on the earth the judgments of Texas, and operative here as against each and every citizen of said countries who may chance to remove here? Could the legislature do such a thing if they desired? If that statute is good as to the judgments of one of the sister States, it is equally good as to the nations of central Asia, the middle of Africa, or the Hottentot country, and a Texas legislature becomes a body of magnificent powers and of superb jurisdictional authority. Now it is submitted that such is not the construction to be placed on this statute. It would revise the whole tenor of practice, and it is thought the rules of construction as well as of jurisdictional powers, as viewed from the standpoint of territorial boundaries.

It is further contended that if the above mentioned words have any meaning at all, they only refer to jurisdictional powers and questions of courts inside of Texas boundaries, and not beyond that point or those limits.

If it is to be hedged in in its construction to the sister States (and this can not be done in the face of the expression), then the appropriate expression is not used, because it does not refer to the other States at all. Where the judgments of the sister States are given any vitality here, or where, by the comity of our interstate relations, these courtesies are extended, it is always set out in no uncertain manner, and appropriate language is used. Where it is intended that the judgments of other States are to

be operative here, that fact is set out, and the word "*States*" occurs in the laws. Could it (our statute) reach beyond the point of inter-State relations and take in and include foreign countries? The relations of the States of this nation to each other and to foreign nations are left with the general government, and are then governed by international law and treaties.

Then we submit that, while the Texas legislature is a very wonderful and powerful legislative body, they could not and did not intend to reach out, take in and legislate with reference to all nations of every clime under the sun. And we submit further that, if that little expression "or in any other jurisdiction" means anything, it refers to the Federal courts, and to the convictions had therein in the State of Texas. This brings her legislation within her own boundaries, and it acts upon other matters within her own domain, without encroachment upon the rights of others. Now, what is a felony? Upon what does the idea of a definition of felony depend? Who has the right to define in the different *jurisdictions*, if that word means nations or nationalities? Of course, there is but one answer to this proposition. One thing is evident, and that is that Texas can not define it outside of Texas.

Then our statutes can refer only to such felonies as Texas declares to be felonies. These may not be felonies in other countries. That depends upon the government of the other countries. We may have felonies that the other nationalities (jurisdictions) do not recognize, and those *jurisdictions* may have felonies that we could not entertain. Then, what is a felony? If to be construed by Texas laws, we are spreading out our jurisdiction over the civilized and heathen world. If to be construed by foreign laws (jurisdictions), then we are calling in their laws and making them operate here, which is repulsive to our spirit of independence and complete nationality, and is in violation of statutory as well as fundamental theories of government and of criminal jurisprudence. (Penal Code, arts. 1, 2 and 3; Constitution of Texas and the declaration of independence of Texas and of the United States of America.) Then a felony of other nationalities (jurisdictions) would not necessarily be felony here, and could not be unless our statute so declared it. (Penal Code, art 3.) Any other construction would beget endless confusion. Texas can not declare incompetent as witnesses persons who are convicted of violations of laws of other States. Texas can

not define felonies for other States or nations.    Other nations
and States can not define felonies for Texas.

Texas can, perhaps, declare incompetent as witnesses persons
who are convicted in the federal courts in this State, and this is
stated without going further into that question.    But it is ad-
mitted, for the sake of the argument, that it might assume this
power.    The United States government has, for proper govern-
mental purposes, certain courts with certain jurisdictional pow-
ers of offenses and of territorial limits in Texas.    It has decided
territorial jurisdiction over the lands ceded to the United States
government by this State, and this is exercised to the exclusion
of the State courts.    (Rev. Stat., art. 334; Rev. Stats., arts. 319
to 335, inclusive.)    It will be seen from reading these articles
that there are certain reservations contained in them in favor of
the State.    They reserve concurrent jurisdiction so far that
Texas writs, etc., may be executed on the said ceded lands.
(Rev. Stat., art. 334).    This reservation to the State does not
abridge the power and jurisdiction of the United States on
these ceded lands, and the United States *jurisdiction is ex-
clusive.*    (8 Mass., 72, Com. v. Clary; 19 Ohio State, 306, Sinks
v. Reese.)

Again: It will be seen that all crimes and offenses cognizable
under the *authority* of the United States *shall be exclusive* of the
courts of the several States, and some of these offenses are
exclusively in the jurisdiction of the circuit courts and some in
the district courts, and some concurrent in the two federal
courts.    (55 Georgia, 192, 194, Ross v. State, and statutes cited
therein; 8 Mass., 72, Com. v. Clary; 19 Ohio State, 306, Sinks v.
Reese.)

Such judgments of the federal courts, rendered in this State,
could not be received as evidence in the State courts, for the
purpose of disqualifying a witness, independent of State legis-
lation.    Now, to avoid this, our legislature enacted said statute,
or rather inserted that clause, " or any other jurisdiction."

If applied to the judgments of said courts, and given that con-
struction, said expression might stand, because operative within
Texas and over matters within Texas, and over which this State
might legislate for that purpose, perhaps.    It is certain that her
jurisdiction does not extend to said ceded lands to try offenses
or matters of that character, but it is believed that our legisla-
ture could say that when a party has been convicted of a felony

in one of said courts in Texas, that conviction would render him incompetent to testify in our State courts.

WILLSON, JUDGE. A. S. Kaufman was the principal witness who testified in behalf the State on the trial of this cause. Defendant objected to the competency of this witness, and in support of such objection offered in evidence a certified copy of the record of a judgment of the circuit court of Barber county, State of Kansas, showing that one A. S. Kaufman had been convicted in said court of the crime of forgery in the second degree, and sentenced to confinement in the penitentiary of that State for the term of one year from the date of said conviction, said date being November 14, 1884.

To this judgment the State objected. First. Because it did not appear from said record that forgery is felony in Kansas. Second. Because it did not appear from said record that A. S. Kaufman had ever been convicted of a felony ; and, third, because it appears from said record that A. S. Kaufman had been tried and convicted upon an information, and the Constitution of the United States prohibits a conviction for any felony except upon an indictment. These objections to the judgment were sustained, and the witness was permitted to testify in the cause ; to which ruling of the court the defendant excepted and reserved his bill.

We will consider the objections to the judgment in the order in which they are stated, and the first two may be considered together. It fully appears from said judgment that said witness had been convicted of "felony" as that term is defined by the laws of this State. By the laws of this State "every offense which is punishable with death, or by imprisonment in the penitentiary, either absolutely or as an alternative, is a felony." (Penal Code, art. 54.) All forgeries, by the law of this State, are punishable absolutely by confinement in the penitentiary. (Penal Code, chap. 1, title 14.)

But the objection made to the judgment is that it does not show that the forgery named therein was a *felony* by the law of Kansas, the State in which the conviction was had. Conceding that the conviction would not render the witness incompetent unless the crime was a *felony* by the law of Kansas, as well as by the law of this State, and this, we think, is the correct view (Chase v. Blodgett, 10 N. H., 22), still it was not necessary that the judgment on its face should show that the offense

was a felony by the law of Kansas. That fact, if it was a fact, would properly be proved by the law of that State, and hence the first two objections to the evidence were not valid and should not have been sustained.

The third and only other objection made to the judgment is not maintainable. The fifth amendment to the Constitution of the United States, which provides that "No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury," etc., is not a limitation upon the powers of the States, but upon those of the United States. The Constitution of the United States being framed for the establishment of a national government, it is a settled rule of construction of that instrument that the limitations it imposes upon the powers of government are in all cases to be understood as limitations upon the government of the Union only, except where the States are expressly mentioned. (Cooley on Const. Lim., p. 25.) Therefore the power to prosecute crime by information, or by other mode except by indictment of a grand jury, not being surrendered by the States, they may, and some of them do, exercise such power. If, in the State of Kansas, a prosecution for felony, by information, is authorized by the organic and statutory law of that State, such a prosecution is legal in that State, and a judgment rendered therein would be valid in any other State, although under the Constitution or law of such other State, a prosecution for felony can only be by indictment of a grand jury, as is the case in our State.

But, as the judgment offered in evidence shows upon its face that it would not be a valid judgment had it been rendered in this State, it devolved upon the defendant to show that it was valid under the Kansas law, and until this was shown it was not admissible in evidence. "A judgment of another State, when offered in evidence, ought to be shown to be valid. If it would not be valid if rendered in the State where it is offered in evidence, the party who relies upon it must show that it is valid according to the laws of the State within whose jurisdiction it was pronounced." (Freeman on Judgments, sec. 571; Crafts v. Clark, 31 Iowa, 77.) Whilst, therefore, neither of the three objections made to the judgment was sufficient to render it inadmissible, the court did not err in rejecting it, because upon its face it is apparent that it would not have been a valid judgment under the laws of this State, had it been rendered in any court of this State, the prosecution being, as it recites, by information

(Bill of Rights, sec. 10; Code Crim. Proc., art. 416), and it was not proved that it was a valid judgment by the laws of the State where it was rendered.

As this view disposes of the question presented by the bill of exception, we might be excused for declining to discuss another objection urged against the admissibility of the judgment, by the assistant attorney general, and ably argued in his brief. He assumes the position that a judgment of conviction of a felony had in another State can not be used to disqualify a witness in the courts of this State. This presents a question which has not been decided by the courts of last resort in this State, and which is interesting and important; and, because of its importance, and of the probability that it will arise in other cases, we think it not improper that we should now express our views upon it.

Leaving out of view any statutory provision upon the subject, the position of the assistant attorney general is sustained by very high, if not the great weight of authority. There is, however, much conflict in the decisions of States which have no statute declaring the rule. (1 Greenl. Ev., sec. 376; Whart. Crim. Ev., sec. 363; 1 Bish. Crim. Law, secs. 109 and 976; and notes in which the authorities are collated by the authors.) We would incline to the view contended for by the assistant attorney general, were we called upon to decide the question without being controlled by statutory enactment. But in this State we have statutory provisions on the subject, and in the consideration and determination of the question we must be governed by those provisions.

It is provided that all persons are competent to testify in criminal actions, except certain persons specifically mentioned, one of those exceptions embracing "all persons who have been or may be convicted of felony in this State, or in any other jurisdiction, unless," etc. (Code Crim. Proc., art. 730, sub-div. 5.) It is ingeniously and plausibly argued by the assistant attorney general that this statute does not affect the doctrine contended for by him,—that the words "or in any other jurisdiction," occurring in said provision, must be construed to mean the jurisdiction of the United States when exercised within the territorial limits of this State, and do not embrace any jurisdiction beyond those territorial limits.

To place this construction upon the words quoted would, it seems to us, be a narrow and strained interpretation, and would not fully reach the legislative intent. We are strengthened and

confirmed in this view when we revert to the Act of the legislature which, for the first time in this State, prescribed this disqualification:—that is, the act of March 6, 1863, the language of which is, "All persons who have been or may be convicted of felony in this or in any other State of the Confederate (United) States, or of any other State or kingdom, unless," etc. (Pasc. Dig., art. 3109.) This was the statute in force at the time of the revision, and is the statute which the revisers had before them when they framed subdivision 5 of article 730 of the Code of Criminal Procedure. It is known that it was the general rule and purpose of the revisers, in changing the language of a statute, to retain its substance and intent, the change in its verbiage in most instances being made with the view only of rendering it more concise and plainer in meaning. It is evident to our minds that in framing subdivision 5 of Article 730 there was no intention to change the substance and meaning of the act of 1863, but the purpose was merely to render the provision more concise by substituting the words "or in any other jurisdiction" for the words "in this or any other State," used in the original Act. Our conclusion, therefore, is that under our statute a conviction of a felony is available to disqualify a witness, although such conviction was not had within the territorial limits of this State.

It is to be observed that this provision of our statute relates and is confined to *criminal* actions. There is no such statutory provision governing in *civil* actions. As to the policy of this statutory provision, we have nothing to do. Strong reasons in support of its wisdom and justice can doubtless be advanced, while, in opposition, grave objections might be arrayed. In his able brief the assistant attorney general suggests that if the construction which we have placed upon this statute be a correct one, then the statute is invalid, because it is violative of the fundamental principles of our government. It not being essential to a determination of this case that this question be decided, we shall decline to discuss or pass upon it. We have, however, to some extent, investigated the subject, and incline to the opinion that the statute is valid.

II. It was not error to omit to charge the law with regard to accomplice testimony. There is no evidence tending to show that the witness Kaufman was an accomplice in the theft charged against the defendant.

III. It is objected to the charge of the court that it does not

instruct the jury as to the penalty for the offense. The charge is that the jury should "assess the punishment at not less than two nor more than five years," but does not state that said punishment shall be by confinement in the penitentiary. The jury in their verdict assessed the punishment at confinement in the penitentiary for two years. The charge was not excepted to, and it is apparent from the verdict that the jury understood it correctly, and were not misled by the failure of the court to state that the punishment should be by confinement in the penitentiary. The omission in the charge evidently did not operate to defendant's injury, and such omission can not be regarded as fundamental or even reversible error. (Hill v. The State, 11 Texas Ct. App., 456.) In the case of Hamilton v. The State, 2 Texas Court of Appeals, 494, this court seems to have held a contrary view, but it does not appear from the published report of that case what was the verdict of the jury, or whether the charge was excepted to. To the extent that the decision in that case conflicts with our views herein expressed, it is overruled.

We have considered other errors complained of by the defendant, but they are of a character not necessary to be discussed, and there is no error apparent of record for which the conviction should be disturbed, wherefore the judgment is affirmed.

*Affirmed.*